# SUPREME COURT OF THE UNITED STATES

## TIM SHOOP, WARDEN *v.* JERONIQUE D. CUNNINGHAM

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 21–1587.   Decided November 14, 2022

The motion of respondent for leave to proceed *in forma pauperis* is granted.  The petition for a writ of certiorari is denied.

JUSTICE THOMAS, with whom JUSTICE ALITO and JUSTICE GORSUCH join, dissenting from denial of certiorari.

In 2002, respondent Jeronique Cunningham concluded an armed robbery of his drug dealer with a spray of bullets that killed a teenager and a toddler.  An Ohio jury convicted him of capital murder, and the trial court sentenced him to death.  Twenty years later, the Sixth Circuit ordered an evidentiary hearing to determine whether the foreperson's presence on the jury deprived Cunningham of due process— either because the foreperson received prejudicial outside information about Cunningham or because she was biased by an undisclosed relationship with the victims' families.  In analyzing the first claim, the Sixth Circuit once again flouted the deferential standard of review demanded by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  In analyzing the second claim, the Sixth Circuit applied an incorrect framework to justify a fishing expedition based on allegations with no admissible factual foundation.

To correct these manifest abuses of the Sixth Circuit's habeas jurisdiction, I would grant Ohio's petition and summarily reverse the judgment below.  Therefore, I respectfully dissent from denial of certiorari.

I

On January 3, 2002, Cunningham and his half-brother, Cleveland Jackson, purchased crack cocaine from Shane Liles in Lima, Ohio. That evening, Cunningham and Jackson returned to Liles' apartment to rob him. Both were armed with handguns. Liles was not home when the would-be robbers arrived, so Liles' girlfriend, Tomeaka Grant, called him to let him know he had visitors. Cunningham and Jackson waited for Liles in the living room, where three teenagers—Leneshia Williams, Coron Liles, and Dwight Goodloe, Jr.—were watching The Fast and the Furious. In the meantime, Tomeaka Grant returned to the kitchen, where she was playing cards with James Grant (her brother) and Arnetta Robinson (a family friend). James Grant's 3-year-old daughter, Jala Grant, was also present.

When Liles got home, Jackson pretended to be interested in another drug buy until Cunningham drew his gun. Cunningham then herded the teens into the kitchen, where he held everyone at gunpoint. Meanwhile, Jackson walked Liles upstairs at gunpoint while demanding drugs and money, tied his hands behind his back, and finally forced him to join the group in the kitchen.

The two robbers ordered the assembled victims, now eight in total, to place their valuables on the kitchen table. When Liles said he had none left, Jackson shot him in the back. Both robbers then fired into the huddled group until their guns were empty. All eight victims were shot. Two died: 17-year-old Leneshia and 3-year-old Jala, both killed by bullets to the head. Jala's father, James Grant, was shot five times as he vainly attempted to shield his young daughter. Robinson was comatose for 47 days, and Tomeaka Grant lost an eye.

In June 2002, a jury found Cunningham guilty of aggravated murder, attempted murder, and aggravated robbery. After a penalty hearing, the jury recommended and the trial court imposed the death sentence for the murders. The

Ohio Supreme Court affirmed Cunningham's convictions and sentence. *State* v. *Cunningham*, 105 Ohio St. 3d 197, 2004-Ohio-7007, 824 N. E. 2d 504.

Cunningham filed a state postconviction motion, asserting (among other claims not relevant here) that the jury foreperson's presence on the jury had deprived him of a fair trial. Cunningham based this claim on a postverdict interview that the foreperson had given to a private investigator working for Jackson's defense team. The investigator's notes reflect that the foreperson discussed the evidence in the case and what she and the other jurors had thought about it in detail. Then, near the end of the interview, she stated that "'some social workers worked with Jeronique [Cunningham] in the past and were afraid of him.'" *State* v. *Cunningham*, 2004-Ohio-5892, ¶60 (App.). Latching onto that statement, Cunngingham alleged that the foreperson, who worked at Allen County Children Services, had received extraneous prejudicial information about him from her colleagues.

The trial court dismissed the claim without discovery or an evidentiary hearing, and the Ohio Court of Appeals affirmed. See *id.*, ¶¶67–71. The Ohio Court of Appeals explained that the investigator's notes did not suggest that the foreperson had obtained any information from her fellow social workers prior to Cunningham's trial. After all, the court noted, the record did not show when the investigator had interviewed the foreperson, and the foreperson had been thoroughly examined in *voir dire* with no indication that she could not be fair and impartial. *Id.*, ¶61. The court further reasoned that the foreperson's negative "impression of Cunningham's character . . . was likely shaped during the trial" and that the rest of the interview notes showed that the foreperson "followed the law and carefully considered the evidence in the case." *Id.*, ¶62.

In 2006, Cunningham filed a federal habeas corpus petition in the District Court for the Northern District of Ohio,

reasserting his outside-information claim. Although Cunningham's claim had been adjudicated on the merits in state court, the District Court decided in 2008 that he was entitled to discovery about "when [the foreperson] acquired [the outside] information, who she learned it from, whether she told any other jurors and whether this information influenced her or any other jurors to convict Cunningham and/or vote for the death penalty."[1] *Cunningham* v. *Hudson*, 2008 WL 2390777, *7 (June 9, 2008). The District Court thus authorized Cunningham to depose the foreperson, all seated and alternate jurors, Allen County Children Services employees, and the investigator who had interviewed the foreperson.

Cunningham obtained affidavits from two other jurors, neither of whom recalled hearing the foreperson discuss any outside information about Cunningham. The jurors did, however, attest to a statement by the foreperson regarding the victims' families during deliberations. According to one juror, the foreperson said, "I know the families of the people that were shot in the kitchen. The families know me and I am going to have to go back and see them. These families are my clients." App. to Pet. for Cert. 101a. According to the second juror, the foreperson "told the young woman [the first juror] and the jury that the young woman did not have to work in the local community." *Id.*, at 102a.

The foreperson was deposed in January 2009. She confirmed that she had not spoken to any of her colleagues about Cunningham prior to his trial. Rather, she only "looked through [his] files" after the trial and sentencing

_____

[1] When a claim has been adjudicated on the merits in state court, review under 28 U. S. C. §2254(d)(1) must be limited to the evidence in the state-court record. *Cullen* v. *Pinholster*, 563 U. S. 170 (2011). Although this Court had not yet decided *Cullen* when the District Court authorized Cunningham to take discovery, the Sixth Circuit had already applied the same rule in binding precedent. See *Eady* v. *Morgan*, 515 F. 3d 587, 601 (2008).

were "completely over." *Cunningham* v. *Hudson*, No. 3:06–cv–00167 (ND Ohio, Feb. 15, 2009), ECF Doc. 107, p. 4. Cunningham's counsel also asked the foreperson if she knew the victims, but the presiding Magistrate Judge sustained the State's objection that the question was beyond the scope of Cunningham's bias claim. Soon afterward, the District Court allowed Cunningham to amend his juror-bias claim to add an allegation that the foreperson was biased by a relationship with the victims' families.

The two other jurors were deposed in October 2009. The first juror substantially repeated the statements in her affidavit, while acknowledging that she was merely paraphrasing the foreperson's words and that her memory was not very good. The second juror testified that the foreperson "stated she may in the future be working with the families," but "not that she had been." App. to Pet. for Cert. 103a. The District Court again permitted Cunningham to amend his claim to include these statements as related in the depositions.

The case was then assigned to a different District Judge, who dismissed all of Cunningham's claims as procedurally defaulted, meritless, or both, and denied a certificate of appealability (COA) in 2010. But the Sixth Circuit granted a COA on seven claims, including the claim that the foreperson's presence on the jury had deprived Cunningham of a fair trial. In 2014, three years after granting the COA, the Sixth Circuit concluded that it was unclear whether Cunningham's family-relationship claim was exhausted, and it remanded for the District Court to grant a stay and abeyance while Cunningham presented the claim to the state courts. *Cunningham* v. *Hudson*, 756 F. 3d 477 (*per curiam*). The Ohio courts ultimately confirmed that Cunningham had no further state-law avenue for review. See *State* v. *Cunningham*, 2016-Ohio-3106, ¶¶10–26, 65 N. E. 3d 307, 311–316 (App.). In 2019, the District Court (essentially re-

peating its analysis from nine years earlier) again dismissed Cunningham's habeas claims as procedurally defaulted, meritless, or both.

Just over two years later, in the decision below, a divided Sixth Circuit panel reversed and remanded, ordering the District Court to "conduct an evidentiary hearing to investigate Cunningham's two juror-bias claims." 23 F. 4th 636, 678 (2022). First, the majority held that the Ohio postconviction courts unreasonably applied *Remmer* v. *United States*, 347 U. S. 227 (1954), by rejecting Cunningham's outside-information claim without conducting a hearing. 23 F. 4th, at 650. Drawing heavily on Circuit precedent, the majority reasoned that any "colorable claim" of outside influence entitles a defendant to a "*Remmer* hearing," and it held that Cunningham's claim met that standard. *Id.*, at 651 (citing *Ewing* v. *Horton*, 914 F. 3d 1027, 1030 (CA6 2019); *Garcia* v. *Andrews*, 488 F. 3d 370, 376 (CA6 2007); *United States* v. *Herndon*, 156 F. 3d 629, 635 (CA6 1998)).

The panel majority also held that Cunningham was entitled to a hearing on the family-relationship claim. Its analysis consisted of an elaborate comparison between Cunningham's claim and *Williams* v. *Taylor*, 529 U. S. 420 (2000) (*Michael Williams*), where we held that AEDPA did not bar an evidentiary hearing because the petitioner had been diligent in developing his claim's factual basis. See 23 F. 4th, at 655–662. The majority concluded that "[t]his case is *Michael Williams*, blow-for-blow," and—on that basis—ordered the District Court to conduct an evidentiary hearing. *Id.*, at 662. It was undeterred by the fact (which it did not dispute) that Federal Rule of Evidence 606(b)[2] barred

————————
[2] Rule 606(b) provides:

"(1) *Prohibited Testimony or Other Evidence.* During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may

the jurors' testimony about the foreperson's jury-room comments. The majority overcame that difficulty by simply *imagining* admissible evidence, such as "the testimony of a victim's family member," that Cunningham could *conceivably* develop on remand. *Id.*, at 661–662.[3]

Judge Kethledge dissented in part. Regarding Cunningham's outside-information claim, Judge Kethledge explained that AEPDA forbade the majority's reliance on Circuit precedent and that *Remmer* would not compel all fairminded jurists to agree that Cunningham was entitled to an evidentiary hearing. 23 F. 4th, at 679–682. Regarding the family-relationship claim, Judge Kethledge agreed that Cunningham was diligent under *Michael Williams* but concluded that this claim failed because its entire factual basis was barred by Rule 606(b) and the time-honored policy against receiving juror testimony to undermine a verdict. 23 F. 4th, at 682–685.

The State petitioned for a writ of certiorari, which the Court now denies. I would instead grant the petition and summarily reverse for the reasons that follow and those in Judge Kethledge's dissent below.

II

Although the procedural history of this case is complicated, the Sixth Circuit's errors were not. The panel majority's reasons for ordering an evidentiary hearing on either

———————

not receive a juror's affidavit or evidence of a juror's statement on these matters.

"(2) *Exceptions.* A juror may testify about whether:

"(A) extraneous prejudicial information was improperly brought to the jury's attention;

"(B) an outside influence was improperly brought to bear on any juror; or

"(C) a mistake was made in entering the verdict on the verdict form."

[3] The majority denied relief on Cunningham's other claims, though it lamented that "the harsh standards of AEDPA as elaborated by the [Supreme] Court" required it to do so. 23 F. 4th, at 671.

of Cunningham's juror-bias claims are indefensible.[4]

## A

Because the Ohio Court of Appeals rejected Cunningham's outside-information claim on the merits, the exacting standard of 28 U. S. C. §2254(d), often called AEDPA deference, applied. That standard bars federal habeas relief for any claim "adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

We have explained that "'clearly established Federal law,'" for purposes of §2254(d)(1), "refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." *Williams* v. *Taylor*, 529 U. S. 362, 412 (2000). When assessing a state-court decision under §2254(d), federal habeas courts may not rely either on lower court precedents, see, *e.g.*, *Parker* v. *Matthews*, 567 U. S. 37, 48–49 (2012) (*per curiam*), or on decisions of this Court that postdate the relevant state-court adjudication. See, *e.g.*, *Shoop* v. *Hill*, 586 U. S. ___,

---

[4] For present purposes, and because no party argues otherwise, I accept the characterization of Cunningham's juror-bias allegations as presenting two distinct "claims," only one of which is governed by §2254(d). I note, however, the apparent tension between that characterization and the District Court's rationale for allowing the amendment that added Cunningham's second "claim" to relate back to the filing of his habeas petition. See *Cunningham* v. *Hudson*, No. 3:06–cv–00167 (ND Ohio, July 21, 2009), ECF Doc. 120, p. 4 (construing the amendment as "concern[ing] evidence of juror misconduct pled in the original Petition" and as "tied to [the same] core of operative facts").

\_\_\_–\_\_\_ (2019) (*per curiam*) (slip op., at 5–7). Nor may a federal habeas court extend the rationales of this Court's precedents. *White* v. *Woodall*, 572 U. S. 415, 426 (2014). The bottom line: Where §2254(d) governs, habeas relief can issue only if the relevant state-court decision—judged solely by the four corners of this Court's holdings—"was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington* v. *Richter*, 562 U. S. 86, 103 (2011). "If this standard is difficult to meet, that is because it was meant to be." *Id.*, at 102.

The Sixth Circuit flouted this standard when it held that the Ohio postconviction courts unreasonably applied *Remmer* in this case. In *Remmer*, during a trial for tax evasion, an unknown person offered a juror a bribe to acquit the defendant. 347 U. S., at 228. The juror reported the incident to the court, the court reported the incident to the prosecutors *ex parte*, and a Federal Bureau of Investigation agent interviewed the juror—all while the trial was ongoing and all without the defendant's knowledge. *Ibid.* The defendant first learned of these events after the verdict, and he moved for a new trial. *Ibid.* The District Court denied the motion without holding a hearing, and the Ninth Circuit affirmed. *Id.*, at 229. In a 2½-page opinion, this Court vacated and remanded for the District Court "to hold a hearing to determine whether the incident complained of was harmful to the petitioner, and if after hearing it is found to have been harmful, to grant a new trial." *Id.*, at 230.

As Judge Kethledge observed, "a fairminded jurist could easily conclude" that *Remmer* did not require a hearing on Cunningham's outside-information claim. 23 F. 4th, at 681. *Remmer* ordered a hearing to weigh the impact of *undisputed* outside contacts with a juror. Here, by contrast, Cunningham merely *alleged* that outside contact had occurred, based on a speculative reading of an ambiguous postverdict

statement. And *Remmer* quite obviously did not clearly establish the Sixth Circuit's rule that any "colorable claim of extraneous influence" mandates "a *Remmer* hearing." 23 F. 4th, at 651 (majority opinion). "'[I]f a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *Woodall*, 572 U. S., at 426 (quoting *Yarborough* v. *Alvarado*, 541 U. S. 652, 666 (2004)).

But the Sixth Circuit's error went even deeper. Not only did *Remmer* not clearly establish the Sixth Circuit's "any colorable claim" rule, it is not even clear that *Remmer* established *any* constitutional rule. Words like "constitutional" and "due process" are nowhere to be found in the Court's laconic opinion. One could just as naturally—perhaps more naturally—read *Remmer* as a case about new-trial motion practice under the Federal Rules of Criminal Procedure than as one about the requirements of constitutional due process. A rigorous §2254(d)(1) analysis, therefore, likely would take no account of *Remmer* at all.[5]

Here, the Sixth Circuit not only relied on *Remmer*, it stretched it far beyond its four corners and used Circuit

———————

[5] In its *Remmer* analysis, the Sixth Circuit cited three other decisions of this Court, none of which provides clearly established federal law supporting the decision below. Contrary to the panel majority's apparent understanding, *Smith* v. *Phillips*, 455 U. S. 209 (1982), did not hold that *Remmer* was binding on state courts as a matter of constitutional due process; rather, it held only that a state court did not *violate* due process by responding to an allegation of juror impartiality with a hearing that would have satisfied *Remmer* had it occurred in the federal system. 455 U. S., at 218. Dicta in *United States* v. *Olano*, 507 U. S. 725 (1993), arguably characterize *Remmer* as a constitutional decision, see 507 U. S., at 738–739, but even that is doubtful and, regardless, dicta are not "clearly established Federal law" under §2254(d)(1). See *Williams* v. *Taylor*, 529 U. S. 362, 412 (2000). The actual holdings of *Olano* have nothing to do with the Constitution, and the third case, *Rushen* v. *Spain*, 464 U. S. 114 (1983) (*per curiam*), also explicitly decided no constitutional question. *Id.*, at 117, n. 2.

precedent to patch the seams. Such "plain and repetitive error" deserves summary reversal. *Parker*, 567 U. S., at 49.[6]

B

The Sixth Circuit's grant of an evidentiary hearing on Cunningham's family-relationship claim also merits summary reversal. To start, the panel majority's reasoning simply does not support the relief it ordered. Section 2254(e)(2) bars a federal evidentiary hearing in most cases where the petitioner "has failed to develop the factual basis of a claim in State court proceedings." But even "where an applicant . . . is not barred from obtaining an evidentiary hearing by . . . §2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court." *Schriro* v. *Landrigan*, 550 U. S. 465, 468 (2007); see also Rule 6(a), Rules Governing Section 2254 Cases. Here, the Sixth Circuit held (and the State does not now contest) that Cunningham was diligent in developing his family-relationship claim under *Michael Williams*. That case, however, addressed whether "§2254(e)(2) *barred* the petitioner's request for a federal evidentiary hearing." *Cullen* v. *Pinholster*, 563 U. S. 170, 183 (2011) (emphasis added); see *Michael Williams*, 529 U. S., at 424. Thus, the most the Sixth Circuit's holding justified—as a matter of law—was a remand for the District Court to determine, in its discretion, whether to grant an evidentiary hearing. But the

—————

[6] Fortunately, the Court's failure to correct this error does not leave the Sixth Circuit bound to follow it. In an earlier §2254(d)(1) case involving a *Remmer* claim, the Sixth Circuit acknowledged that "how [it] would apply [its] own Sixth Circuit precedents [did] not guide the analysis," and it denied relief because it found "no Supreme Court precedent that require[d] a *Remmer* hearing on the facts before [it]." *Garcia* v. *Andrews*, 488 F. 3d 370, 377 (2007). Thus, future Sixth Circuit panels are free to disregard the *Remmer* analysis below as nonbinding. See *Lakeside Surfaces, Inc.* v. *Cambria Co.*, 16 F. 4th 209, 218 (2021) ("In situations where two of our published decisions are in tension, we follow the earlier one").

Sixth Circuit usurped that discretion, *mandating* a hearing simply because §2254(e)(2) did not *forbid* one.

Worse and more importantly, any evidentiary hearing on Cunningham's family-relationship claim would be an abuse of discretion no matter what court ordered it. The entire factual basis for this claim consists of the foreperson's statements in the jury room as recalled in two other jurors' years-later testimony. See ECF Doc. 200, at 12–14. As Judge Kethledge explained, those comments are unquestionably barred from judicial consideration "by the longstanding 'rule against admission of jury testimony to impeach a verdict,'" a rule embodied in part by Federal Rule of Evidence 606(b). 23 F. 4th, at 682 (quoting *Tanner* v. *United States*, 483 U. S. 107, 121 (1987)). And, once those comments are disregarded, Cunningham's claim amounts to no more than a bare, unspecified, and unsubstantiated allegation that the foreperson had some sort of relationship with some victims or their families and that it prejudiced him in some way. Such "[t]hreadbare recitals" are not enough to "unlock the doors of discovery" in ordinary civil litigation. *Ashcroft* v. *Iqbal*, 556 U. S. 662, 678–679 (2009). They are certainly not enough under the more rigorous standards governing federal habeas cases. See *Mayle* v. *Felix*, 545 U. S. 644, 649 (2005); *Bracy* v. *Gramley*, 520 U. S. 899, 904 (1997).

The Sixth Circuit nonetheless awarded Cunningham a hearing on the mere *possibility* that it might turn up some kind of admissible evidence supporting some sort of cognizable claim. See 23 F. 4th, at 661–662. On that basis alone, the Sixth Circuit decreed that the jury foreperson and even the family members of the victims must submit to cross-examination about their memories of painful, decades-old events. See *ibid.* Their every word will be picked apart in the hunt for further excuses to drag out this 16-year-old federal habeas action. The Sixth Circuit's deci-

sion is more than an error—it is an injustice. It shows profound disrespect, not merely to the State, but to citizens who perform the difficult duty of serving on capital juries, to the surviving victims of Cunningham's atrocious crimes, to the memories of the two young girls whose lives he snuffed out, and to their families who still, two decades later, have no assurance that justice will ever be done.

## III

By denying certiorari, the Court once again permits the nullification of its jurisprudence. Just a few months ago, I dissented from the Court's refusal to correct a flagrant misapplication of AEDPA by the Sixth Circuit. See *Shoop* v. *Cassano*, 596 U. S. \_\_\_ (2022) (opinion dissenting from denial of certiorari). Today, the Court denies review of a case just as flagrant, if not more so. We should not shirk our responsibility to correct classic AEDPA abuses, especially when a lower court brazenly commits errors for which we have repeatedly reversed it. See *Cassano* v. *Shoop*, 10 F. 4th 695, 696–697 (CA6 2021) (Griffin, J., dissenting from denial of rehearing en banc) (collecting 22 cases in which this Court reversed the Sixth Circuit "for not applying the deference to state-court decisions mandated by AEDPA," including 12 summary reversals).

That said, while I disagree with the Court's newfound tolerance for recidivism, primary responsibility for the Sixth Circuit's errors rests with the Sixth Circuit. That court's record of "plain and repetitive" AEDPA error, *Parker*, 567 U. S., at 49, is an insult to Congress and a disservice to the people of Michigan, Ohio, Kentucky, and Tennessee. Federal habeas review imposes "profound societal costs," "frustrat[ing] both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights." *Calderon* v. *Thompson*, 523 U. S. 538, 554, 555–556 (1998) (internal quotation marks omitted). It also "disturbs the State's significant interest in repose for concluded

litigation, denies society the right to punish some admitted offenders, and intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." *Richter*, 562 U. S., at 103 (internal quotation marks omitted). These problems are serious enough even when courts carefully observe the limits that Congress and this Court have laid down. When a lower court wields its habeas jurisdiction in overt defiance of those limits, the affront to federalism and the rule of law becomes intolerable.

The Sixth Circuit must do better, with or without this Court's help. Unfortunately, the Sixth Circuit's habeas jurisprudence suggests that certain circuit judges' "taste for disregarding AEDPA," *Rapelje* v. *Blackston*, 577 U. S. 1019, 1021 (2015) (Scalia, J., dissenting from denial of certiorari), has found its natural complement in other judges' distaste for correcting errors en banc, no matter how blatant, repetitive, or corrosive of circuit law. See, *e.g.*, *Issa* v. *Bradshaw*, 910 F. 3d 872 (CA6 2018) (denying rehearing en banc); *Mitts* v. *Bagley*, 626 F. 3d 366 (CA6 2010) (same). Of course, reluctance in deploying en banc review is understandable. But only to a point. The Sixth Circuit's habeas problems are well past that point—as evidenced by the depressing regularity with which petitions like this one reach us.

The Court should have delivered that message by summarily reversing the judgment below. Accordingly, I respectfully dissent from denial of certiorari.